**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES** | : | |
| | | **3:16-CR-288** |
| | : | |
| **v.** | | |
| | : | **(JUDGE MANNION)** |
| **EDWIN LEWIS,** | : | |
| **Defendant** | : | |

### MEMORANDUM

## I.   BACKGROUND

On July 29, 2020, defendant Edwin Lewis, a 58-year old inmate confined at Federal Correctional Institution ("FCI") McKean in Bradford, Pennsylvania, who is serving a 97-month federal sentence, (*see* March 2, 2019 Judgment, Doc. 82), filed, *pro se*, a letter Motion for Compassionate Release under 18 U.S.C. §3582(c)(1)(A), and request for immediate transfer to home confinement, due to the COVID-19 pandemic. (Doc. 89). Lewis alleges that he has exhausted his administrative remedies. He states that it is very hard to social distance in prison and that since he is on the team that feeds the inmates, he comes into contact with people "that can pass [COVID-19] very eas[ily]." Lewis appears to allege that he is at a higher risk to suffer complications if he contracts COVID-19 based on his age and race, "African American." Lewis also states that he has completed 55% to 60% of his

1

"statutory release time." Lewis' BOP projected release date is September 3, 2023. *See*, Find an Inmate, Federal Bureau of Prisons, http://www.bop.gov/inmateloc/(search for BOP Register Number "75427-067").

Additionally, Lewis states that he is on the waiting list for the BOP Residential Drug Abuse Program ("RDAP") "even though [he does not] qualify for the time off."

Lewis also seeks release from prison to home confinement under the CARES Act and under 18 U.S.C. §3624(c)(2) alleging that "anyone short of a life sentence can be sent to home confinement." He further requests the court to release him to home confinement so that he can take care of his wife and assist with the care of his grandchildren.

Lewis did not allege in his motion that he has any specific underlying medical conditions which would put him at a higher risk if he did contract COVID-19.[1]

On July 29, 2020, the court directed the government to respond to defendant's motion by August 12, 2020, and to address the exhaustion issue, and to include defendant's medical conditions as well as the safety measures adopted by the prison due to the COVID-19 pandemic. (Doc. 90). The government timely filed its response on August 4, 2020, (Doc. 91), with an

---

[1]Lewis' PSR indicates that he alleged he had Barrett's Esophagus and that he was diagnosed with anxiety and depression. He had a left knee replacement in 2009. (Doc. 73 at 15).

2

attached Exhibit, namely, an email request from the government's counsel to the Executive Assistance at FCI McKean regarding whether Lewis exhausted his BOP administrative remedies with respect to his instant request for compassionate release. (Doc. 91-1). The government indicated that it was advised Lewis did not exhaust his administrative remedies.

On August 12, 2020, Lewis' wife submitted a letter to the court in support of his compassionate release from prison so that he can take care of her at their home in Wilkes-Barre, Pennsylvania, due to her alleged poor health caused by two heart attacks. (Doc. 92).

On August 25, 2020, Lewis filed a document styled "Memorandum Opinion and Order", (Doc. 93), which is construed as his reply brief. In this filing, Lewis addresses the exhaustion issue and attached Exhibits to it, including a copy of his May 22, 2020 Inmate Request and the May 28, 2020 Response from the Warden at FCI McKean. (Doc. 93 at 4-5).

On September 1, 2020, the government filed a motion to file a sur-reply brief to address whether Lewis submitted a proper request for compassionate release with the Warden before he filed his instant motion, i.e., whether he exhausted his BOP administrative remedies. (Doc. 94).

On September 2, 2020, the court granted the government's motion and directed it to file a sur-reply brief by September 14, 2020. (Doc. 95).

On September 4, 2020, the government filed its sur-reply brief. (Doc. 96). The government acknowledges that Lewis has exhausted his administrate remedies under §3582(c)(1)(A)(i) based on his May 22, 2020

3

request for compassionate release he submitted to the Warden, and it argues that Lewis's motion should be denied on the merits since there are not extraordinary and compelling reasons to reduce his sentence.

For the reasons set forth below, Lewis' motion for compassionate release under 18 U.S.C. §3582(c)(1)(A)(i) will be denied on the merits.[2]

---

[2] Lewis also seeks home confinement designation under the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. 116-136, §12003. However, the court does not have authority to grant his request for relief and order the BOP to release him to home confinement. *See* United States v. McCann, 2020 WL 1901089, *3 (E.D. Ky. April 17, 2020) ("While the CARES Act gives the BOP broad discretion to expand the use of home confinement during the COVID-19 pandemic, the Court has no authority under this provision to order that a prisoner be placed on home confinement.") (citation omitted). *See also* United States v. Logan, 2020 WL 2559955, *2 (W.D. N.C. May 20, 2020) ("The Defendant alternatively moves the Court to order his release to home confinement due to the ongoing COVID-19 pandemic. This request, however, must also be denied. The discretion to release a prisoner to home confinement lies solely with the Attorney General."). Further, after a defendant is sentenced to imprisonment by the court, the BOP is solely responsible for determining the defendant's place of incarceration. *See* 18 U.S.C. §3621(b); 18 U.S.C. §3624(c). *See also* United States v. Delacruz, 2020 WL 3405723, *4 (M.D. Pa. June 19, 2020) ("[T]he Court is without authority to control the BOP's placement of Defendant—the Court can neither directly assign Defendant to home confinement nor direct the BOP to do so.").

## II.   DISCUSSION[3]

The court will first consider the exhaustion issue since it is a threshold matter. *See* United States v. Gadsden, 2020 WL 3871083, \*1 (W.D. Pa. July 9, 2020) ("In United States v. Raia, 954 F.3d 594 (3d Cir. 2020), the court of appeals held that district courts cannot consider requests for compassionate release under the First Step Act until a prisoner has exhausted his administrative remedies.").

No doubt that the court must "confirm that exhaustion is satisfied because [the Third] Circuit has held that §3582(c)(1)(A)'s exhaustion requirement is mandatory." United States v. Davidson, 2020 WL 4877255, \*5 (W.D. Pa. Aug. 20, 2020) (citing United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) (mandating "strict compliance" with §3582(c)(1)(A)'s exhaustion requirement)). "The defendant carries the burden of showing that he or she is entitled to a sentence reduction under the statute." United States v. Schultz, —— F.Supp.3d ——, 2020 WL 1872352, at \*2 (W.D. N.Y. April 15, 2020) (citation omitted). "A defendant proceeding on his or her own motion may meet that burden by demonstrating (1) that he or she satisfied the statutory exhaustion requirement, (2) that extraordinary and compelling

---

[3]After Lewis pled guilty to Use of a Firearm During, in Relation to, and in Furtherance of a Drug Trafficking Crime, 18 U.S.C. §924(c), (Count 3), and Possession of a Firearm by a Convicted Felon, 18 U.S.C. §§922(g)(1) and 924(a)(2), (Count 4), the court imposed an aggregate 97-month prison sentence on March 2, 2019, followed by 5-years supervised release. (Doc. 82).

reasons exist for a sentence reduction, and (3) that a sentence reduction is consistent with the applicable Sentencing Guidelines provisions." *Id.* (citations omitted).

"Prior to petitioning a court for relief under §3582(c), a defendant must first file an administrative request for compassionate release with the warden of their facility and then either: (1) fully exhaust BOP's administrative remedies; or (2) wait thirty (30) days from the date their administrative request was filed with the warden." United States v. Davidson, 2020 WL 4877255, *5 (W.D. Pa. Aug. 20, 2020). Thus, "[a] prisoner may file a motion for compassionate release with the sentencing court 'after [he or she] has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, **whichever is earlier**.'" United States v. Harris, 812 Fed.Appx. 106, 107 (3d Cir. 2020) (citing 18 U.S.C. §3582(c)(1)(A) (emphasis original). Further, "the [compassionate release] statute states that the defendant may file the motion thirty days after the warden receives his request." *Id.* (citing United States v. Raia, 954 F.3d 594, 595 (3d Cir. 2020) ("But before they [file a compassionate-release motion], defendants must at least ask the Bureau of Prisons (BOP) to do so on their behalf and give BOP thirty days to respond.")).

"The defendant carries the burden of showing that he or she is entitled to a sentence reduction under the statute." United States v. Schultz, ⸺

F.Supp.3d ——, 2020 WL 1872352, at *2 (W.D. N.Y. April 15, 2020) (citation omitted). "A defendant proceeding on his or her own motion may meet that burden by demonstrating (1) that he or she satisfied the statutory exhaustion requirement, (2) that extraordinary and compelling reasons exist for a sentence reduction, and (3) that a sentence reduction is consistent with the applicable Sentencing Guidelines provisions." *Id.* (citations omitted).

In his reply brief, (Doc. 93), Lewis addresses the exhaustion issue and submitted a copy of his May 22, 2020 Inmate Request to the Warden "to be released for COVID-19 pandemic, or to be transferred to a facility for care of [his] knee." Lewis also asked the Warden "when [the inmates] will be given the test for the virus." The Warden timely responded to Lewis' request on May 28, 2020, explaining that Lewis has received medical care for his knee at the prison, that he did not display any symptoms that would require testing for COVID-19, and that "[his] medical records do not show that he would meet the medical criteria for release as [he] [did] not currently have any medical diagnosis with an eighteen month like expectancy." (Doc. 93 at 4-5).

Thus, Lewis contends that his Exhibits demonstrate that he has exhausted his BOP administrative remedies since he waited 30 days after he filed his request with the Warden to file his instant motion. (Doc. 93 at 6-7). He also contends that the COVID-19 pandemic constitutes an "extraordinary circumstance" warranting his release from prison.

7

In its sur-reply brief, (Doc. 96 at 21), the government states that "[a]t this time, there is not a dispute that the required 30 day time period to exhaust administrative remedies has expired, giving this Court jurisdiction to hear Lewis' motion." Thus, since Lewis has submitted a request for compassionate release with the Warden based on COVID-19, and 30 days has lapsed since he submitted his request, he can now proceed with his motion in this court since he exhausted his administrative remedies.

As the court in United States v. Epstein, 2020 WL 2537648, *2 (D.N.J. May 19, 2020), explained:

> Once a federally imposed sentence commences, a district court has limited authority to modify that sentence. Dillon v. United States, 560 U.S. 817, 825 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." (alterations in original) (quoting 18 U.S.C. §3582(b)). One such authority for modifying a sentence is found in the recently-enacted First Step Act, which allows a defendant to be afforded compassionate release for "extraordinary and compelling reasons." 18 U.S.C. §3582(c)(1)(A)(i).

> The First Step Act, §3582(c)(1)(A)(i), provides in relevant part:

> (c) Modification of an imposed term of imprisonment. The court may not modify a term of imprisonment once it has been imposed except that—

> (1) in any case—

>    (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully

exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the facts set forth in section 3553(a) to the extent that they are applicable, if it finds that –

(i) extraordinary and compelling reasons warrant such a reduction.

Thus, "a defendant seeking a reduction in his sentence under the First Step Act ["FSA"] 'bears the burden of satisfying both that he has (1) exhausted remedies before seeking judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release.'" *Id.* (citation omitted).

The government argues that Lewis has failed to establish that "extraordinary and compelling reasons" support a reduction of his sentence. The government states that "[t]he United States Sentencing Guidelines Manual gives the policy statement for compassionate release in §1B1.13. It provides that a defendant must show three things to establish eligibility for sentencing modification: (1) extraordinary and compelling reasons that indicate modification is appropriate; (2) defendant is 'not a danger to the safety of any other person or to the community;' and (3) 'reduction is

9

consistent with this policy statement.'"  (Doc. 96 at 21) (citing 1B1.13(1)-(3)). The definition of "extraordinary and compelling reasons" is contained in the application notes. *See* USSG §1B1.13, cmt. n.1(A)-(D). Further, as the court in Epstein, 2020 WL 2537648, *3, pointed out, "the Sentencing Commission had defined th[e] term ["compelling and extraordinary reasons"] as it relates to the BOP's discretion under the previous version of section 3582(c)(1)(A), it has not, however, updated its Policy Statement since the passage of the First Step Act." (citing United States v. Rodriquez, —— F. Supp. 3d ——, 2020 WL 1627331, at *3 (E.D. Pa. Apr. 1, 2020); *see also* U.S. Sentencing Guidelines Manual ("U.S.S.G."), §1B1.3, Application Note 1 (U.S. Sentencing Comm'n 2018)). In any event, "the Policy Statement provides useful guidance for district courts in assessing a defendant's eligibility for compassionate release, but it 'does not constrain [a court's] independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under §3852(c)(1)(A).'" *Id.* (citation omitted). "The Policy Statement provides that a defendant may show extraordinary and compelling reasons for compassionate release based on the medical condition of the defendant, the age of the defendant, the defendant's family circumstances, or for "other reasons." *Id.* (citing U.S.S.G. §1B1.13, Application Note 1).

Here, Lewis's motion is based on comment 1(D), which provides that a defendant can seek compassionate release for "an extraordinary and

compelling reason other than or in combination with the reasons described in subdivisions (A) through (C)." §1B1.13 cmt. 1(D).

The government, (Doc. 96 at 23), asserts:

Lewis fails to provide evidence of any preexisting medical conditions that would make him more vulnerable to COVID-19. Lewis merely argues that he should be released from FCI McKean because of his age, race and family responsibilities. (Doc. 89). Based upon a review of Lewis' medical records from this year, it appears that he does not have a medical diagnosis that would make him more susceptible to contracting a serious case of COVID-19.  *See*, Government's Exhibit "A" [Doc. 98].

The government's Exhibits also indicate that as of July 30, 2020, "FCI McKean remains COVID-19 free as no inmates or staff have the virus", and that the prison administrators "have been extremely proactive with our safety and sanitation standards as well as testing, separating and maintaining social distancing to the extent possible in this environment."[4] (Doc. 91-1).

In its sur-reply brief, (Doc. 96 at 18), the government represents that:

[As of September 4, 2020], [FCI McKean] continues to follow the BOP Modified Operations Plan. See, www.bop.gov/coronavirus/covid19_status.jsp. More specifically, all inmates and staff to wear masks; no visitors are permitted in the facility; staff is required to undergo daily temperature checks and symptom screening and movement and congregation of inmates within the

---

[4]*See also* the BOP website, www.bop.gov/coronavirus/index.jsp.

The court notes that as of September 22, 2020, no staff member and no inmates at FCI McKean are reported to have tested positive for COVID-19. *See* https://www.bop.gov/coronavirus.

Also, Luzerne County where Lewis seeks to be released to home confinement, reports 4,027 positive cases of COVID-19 and 189 deaths as of September 22, 2020. *See* PA Department of Health website.

facility is limited. FCI McKean currently has no positive tests among the inmates or staff members for COVID-19.

The court finds that Lewis has not demonstrated that "extraordinary and compelling reasons" warrant a reduction of his sentence under 18 U.S.C. §3582(c)(1)(A)(i). In United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020), the Third Circuit stated that "[t]he First Step Act empowers criminal defendants to request compassionate release for 'extraordinary and compelling reasons'" after the defendant exhausts administrative remedies with the BOP. (citing 18 U.S.C §3582(c)(1)(A)(i)). Lewis does not allege to have any specific recognized medical condition which would put him at an increased risk of complications if he contracts COVID-19. *See* "People Who Are at Higher Risk for Severe Illness," https://www.cdc.gov/coronavirus/2019-ncov/need-extraprecautions/people-at-higher-risk.html. Nor do Lewis' BOP medical records filed by the government show that he has any such conditions. (*See* Docs. 98 & 98-1). The medical records also show that Lewis is receiving regular medical care at the prison, particularly for his left knee condition. Rather, Lewis contends that the ongoing COVID-19 pandemic serves as an extraordinary and compelling reason for a sentence reduction.

As the Third Circuit in Raia, 954 F.3d at 597, explained, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release,

12

especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."

Also, Lewis does not allege that he was exposed to the COVID-19 virus at FCI McKean, nor has he controverted with any evidence the substantial steps identified in the government's sur-reply brief that the BOP is taking to protect the health and safety of both inmates and staff at the prison. (Doc. 96 at 3-8).

As the court in Epstein, 2020 WL 2537648, *6, concluded, "[m]ere 'speculation concerning possible future conditions does not constitute a 'compelling reason' for release." (citing United States v. Veras, 2020 WL 1675975, at *4 (M.D. Pa. Apr. 6, 2020)).

As such, the court finds that Lewis has not met his burden and has failed to show that extraordinary and compelling reasons exist warranting his release from prison to home confinement.

Under the FSA, the court is also required to consider "the factors set forth in section 3553(a) to the extent that they are applicable" *Id.* at *3 (citing §3582(c)(1)(A)). In United States v. Pawlowski, 967 F.3d 327, 330 (3d Cir. 2020), the Third Circuit held that the determination of whether to reduce an eligible defendant's term of incarceration for compassionate release after considering the applicable §3553(a) factors is committed to the discretion of the district court.

As in Epstein, 2020 WL 2537648, *3, the following factors in §3553(a)(1) and (2), apply to the present case:

13

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct.

Since the factual background of Lewis' offense is detailed in the government's brief, (Doc. 96 at 1-2), as well as the PSR, (Doc. 73 at 3-4) ("A search of Edwin Lewis' residence on September 2, 2016, revealed a loaded Mossberg 12 gauge shotgun, a Jimenez 9mm pistol, $1,737, and 23 baggies of heroin."), and is not objected to, the court will not repeat it herein.

Lewis pled guilty to Count 3 of the indictment which carried a minimum term of imprisonment of five years and a maximum term of life. 18 U.S.C. §924(c)(1)(A)(i). He also pled guilty to Count 4 which had a maximum term of imprisonment of 10 years. 18 U.S.C. §924(a)(2). Lewis had a total offense level of 17 and a criminal history category of IV, the guideline imprisonment range for Count 4 was 37 to 46 months. With respect to Count 3, the guideline sentence was the statutory minimum term of imprisonment, i.e., 60 months. Also, the term of imprisonment on Count 3 had to be imposed consecutively to the sentence imposed on Count 4. (PSR, Doc. 73 at 16-17).

Suffice to say that the court has considered the applicable §3553(a) factors and finds that Lewis' '"history and characteristics' and 'the need for the sentence imposed to reflect the seriousness of the offense, to promote

14

respect for the law, ... to provide just punishment for the offense[, and] to afford adequate deterrence to criminal conduct,'" United States v. Burrus, 2020 WL 3799753, *5 (W.D. Pa. July 7, 2020), do not warrant a sentence reduction in his case.

## III.   CONCLUSION

Defendant Lewis' Motion for Compassionate Release and for Immediate Release to Home Confinement related to the COVID-19 pandemic, **(Doc. 89)**, under §3582(c)(1)(A)(i), will be **DENIED**. Further, insofar as defendant Lewis seeks this court to compel the BOP to find that he is eligible for home confinement designation under the CARES Act, the court will **DISMISS** this request since the authority to make this determination lies with the BOP Director and not the court. An appropriate order will follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: October 13, 2020**
16-288-01

15